**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DARRELL SHANTA JENKINS,**

    **Plaintiff,**

**vs.**                                        **Case No. 4:22-cv-00268-MW-MAF**

**SARGEANT V. SODER, et al.,**

    **Defendants.**
_____/

## AMENDED REPORT AND RECOMMENDATION[1]

Plaintiff, Darrell Shanta Jenkins, an inmate proceeding *pro se* and *in forma pauperis*, initiated this civil rights action, under 42 U.S.C. § 1983, and filed an amended complaint. ECF Nos. 1, 8. This Cause is before the Court upon Defendant's Motion for Summary Judgment accompanied by exhibits. ECF Nos. 47, 48. Jenkins did not file a response.[2] ECF No. 54. After careful review, for the reasons stated, Defendant's Motion for Summary Judgment, ECF No. 47, should be denied; and the case should proceed to trial.

---

[1] The earlier Report recommended Defendant's summary judgment should be denied but incorrectly stated that the case should be closed and proceed to trial. Because summary judgment should be denied, this case should continue to trial and should not be closed. Accordingly, the initial Report and Recommendation, ECF No. 55, shall be vacated.

[2] Jenkins' response was originally due September 8, 2023. ECF No. 49. The Court granted Jenkins an extension until October 19, 2023. ECF No. 52. As of the drafting of this Report, Jenkins failed to respond to Defendant's summary judgment motion.

## I. Allegations of Plaintiff's Amended Complaint, ECF No. 8.

Jenkins sued Defendants in their individual- and official capacities for failing to protect him from being stabbed by a fellow inmate. ECF No. 8, pp. 2-3. On January 21, 2022, Jenkins informed Defendants he was fearful about threats he received from a fellow inmate, Zavion Alahad. Id. Jenkins explained to Defendants he provoked an earlier conflict with Alahad on or about December 18, 2021. Id. Due to the December incident, Jenkins spent time in "redlock heightened security." Id. Jenkins also told Defendants Alahad threatened to stab Jenkins in retaliation for the December incident. Id. Soder laughed at Jenkins and said nothing could be done: "Your mouth [is] what got you into it so let your big mouth get you out of it." Id., p. 6. Jones responded similarly and told Jenkins he put himself in that situation and would have to get himself out of it. Id.

The same evening, Defendants left Alahad unattended, without restraints. Id., p. 7. While Jenkins was getting a haircut, Alahad carried out his threat and stabbed Jenkins four times in the head and chest with a knife. Id., pp. 6-7. Jenkins suffered serious head injuries, which required staples. Id., p. 7. His chest wound was packed with gauze and bandaged. Id.

Jenkins alleges Defendants failed to protect him, in violation of the Eighth Amendment. Jenkins seeks $100,000 in compensatory damages;

$50,000 in punitive damages, and the costs of litigation. Id., p. 8.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Accordingly, summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379,

1382 (11th Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to present sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise show there are material issues of fact which demand a trial. Fed. R. Civ. P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987). The trial judge, at the summary judgment stage, does not weigh the evidence but rather determines whether there is a genuine issue for trial: "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin Cty., Ala. v. Purcell Corp., 971 F.2d 1557, 1563 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."

Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, supra).

The Supreme Court has stressed:

> [w]hen the moving party has carried its burden under rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

Matasushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### III. Defendants Motion for Summary Judgment, ECF No. 49.

Defendants argue there is no genuine issue of material fact; and they are entitled to summary judgment as a matter of law. ECF No. 47. Defendants were acting in the course and scope of their employment at Wakulla Correctional Institution at the time of the incident. Id., p. 2. In

support, Defendants only offered their sworn affidavits (ECF Nos. 48-1 and 48-2) and the complete transcript of Jenkins' deposition (ECF No. 54).

Defendants assert there was no substantial risk of harm because Jenkins did not allege generally dangerous prison conditions or an individualized risk of harm from Alahad; even if he did, there was no substantial risk of harm. ECF No. 47, pp. 8-9. Defendants were not made aware of any prior issues between the two inmates. Id., p. 9. Still, there was no substantial risk of harm because Alahad was searched, placed in restraints, and locked to a table fixed to the ground. Id. Defendants took reasonable steps to prevent harm to Jenkins. Id. Defendants insist that Jenkins never sought protective custody or a housing reassignment. Id.

Defendants assert they were not deliberately indifferent to any substantial risk. Id., p. 10. They insist that Plaintiff never expressed to them any fear of Alahad. Id. Even if Jenkins had informed Defendants, it would not have imputed the subjective knowledge necessary to prove they were deliberately indifferent because Jenkins would have to provide specific information for them to conclude the risk was substantial and not merely possible. Id., pp. 10-11.

In response to the failure to intervene claims, Defendants argue that they acted reasonably by securing Alahad before the attack; they did not

know Alahad had a cuff key or weapon; and, when they saw Alahad run to attack Jenkins, they responded immediately and separated the inmates. Id., p. 14. Defendants maintain they are entitled to qualified immunity because they acted reasonably under the circumstances. Id., pp. 14-18.

Jenkins did not file a response to Defendants' motion for summary judgment. However, Jenkins' failure to respond does not inevitably result in summary judgment by default. See Trustees of Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers v. Wolf Crane Serv., Inc., 374 F.3d 1035, 1039-40 (11th Cir. 2004) ("summary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment"). Instead, the court "must consider the merits of the motion" under the usual summary judgment standard articulated in Fed. R. Civ. P. 56. Id. at 1039 (citing United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004)).

## IV.  Discussion

Having fully considered Defendants' arguments, the Court is mindful that at the summary judgment stage, it is not tasked with fact finding; that is a matter reserved for a trial. See Sconiers v. Lockhart, 946 F.3d 1256, 1263 (11th Cir. 2020). The Court is required to accept as fact all of Plaintiff's allegations if they are sufficiently supported by evidence on the record and

is not at liberty to weigh the evidence. Anderson, 477 U.S. at 251. A court cannot grant summary judgment if "the only issue is one of credibility," because the issue is factual. Mize v. Jefferson City Bd. Of Educ., 93 F.3d 739, 742 (11th Cir. 1996). The Court is required to "view all evidence and make all reasonable inferences in favor of "the non-moving party." Allen v. Bd. of Pub. Educ. For Bibb Cty., 495 F.3d 1306, 1315 (11th Cir. 2007) (citations and quotation marks omitted). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issues of material fact, then the court should not grant summary judgment." Id. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." See Anderson, 477 U.S. at 255.

　A. Defendant's Version of Events

Defendants' short affidavits are nearly identical to each other. ECF No. 48-1 and 48-2. The summary of their affidavits is presented within the motion for summary judgment. ECF No. 47, pp. 2-5. On the day of the alleged attack, Defendants were assigned to conduct inmate showers in Jenkins' housing dorm. Id., p. 2. Inmates would be searched in their respective cells first,

placed in restraints, and escorted to the showers or one of the multipurpose rooms if they want a shave or haircut. Id. In the multipurpose room, inmates remained in restraints secured to a table fixed to the ground. Id.

Jenkins wanted a haircut; so, Defendants escorted him to one of the multipurpose rooms and secured him to the table. Id., p. 3. Then, Defendants escorted Alahad to the other multipurpose room for a haircut -- adjacent to Jenkins' room -- and secured Alahad to the table. Defendants continued escorting other inmates to showers and returning them to their cells. Id. Within several minutes, when Defendants were escorting another inmate, Sodor saw Alahad run into the room holding Jenkins. Id. Defendants were, approximately, 20-30 feet away. Id. Defendants state they had no prior indication that Alahad was attempting to escape from his restraints. Id.

Immediately, Sodor ran into the room holding Jenkins, while Jones remained with the inmate they were escorting. Id., p. 3. Upon entering, Sodor saw Alahad attacking Jenkins. Id., p. 2. Sodor grabbed Alahad, pulled him away, and attempted to redirect him to the floor, but Alahad escaped Sodor's grasp, ran to Jenkins, and continued the attack. Id. Jones secured the escorted inmate, ran to the room, and then placed himself between Jenkins and Alahad to separate them. Id., p. 4. Again, Sodor attempted to take Alahad to the floor, but he slipped from Sodor's grasp, ran to his cell, and

closed the cell door. Id., p. 4. Sodor followed Alahad to ensure his cell door was secured while Jones remained with Jenkins. Id. When Sodor returned, he and Jones escorted Jenkins to the medical unit; Jenkins was bleeding from his head and chest. Id.

Evidently, Alahad possessed a hidden makeshift cuff key and small homemade weapon, but neither were found during the search. Id. Defendants claim they did not know Alahad possessed the key or weapon before the attack. Id. Defendants insist Jenkins never alerted them to any threat by Alahad otherwise they would not have removed the two inmates at the same time. Id., p. 5. Defendants responded to the attack as promptly as possible and were able to prevent more serious harm. Id.

B. Failure to Protect and Failure to Intervene

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994) (alterations and internal marks omitted)). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834; see also Purcell v. Toombs Cty., 400 F.3d 1313, 1321 (11th Cir. 2005) ("[A] prison custodian

is not the guarantor of a prisoner's safety.") (internal marks omitted). The injury must be "sufficiently serious" and show the inmate was incarcerated under conditions posing a substantial risk of serious harm. Farmer, 511 U.S. at 834.

A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (internal marks omitted) (alterations adopted); see also Farmer, 511 U.S. at 828 ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). Acting with "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." Farmer, 511 U.S. at 836. The plaintiff must allege facts which demonstrate (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) a causal connection between the defendant's conduct and the Eighth Amendment violation. See Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015).

As to the second factor, deliberate indifference, "the defendant-official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also

draw that inference." Johnston v. Crosby, 135 F. App'x 375, 377 (11th Cir. 2005). In other words, prison officials must possess enough details about a threat to enable them to conclude that the threat presents a "strong likelihood" of injury, not a "mere possibility." See, e.g., Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015); Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990). "The unfortunate reality is that 'threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.'" Marbury v. Warden, 936 F.3d 1227, 1236 (11th Cir. 2019) (quoting Prater v. Dahm, 89 F.3d 538, 542 (8th Cir. 1996)).

As explained below, the parties disagree on whether, prior to the attack, Jenkins advised Defendants about specific threats Alahad made to him so that they were aware of a substantial risk of harm -- a genuine issue of material fact.

1. *Jenkins' Deposition*

During a sworn deposition, Jenkins described the history of conflict between him and Alahad. ECF No. 54, pp. 13-22. Consistent with his complaint, Jenkins admitted that in December 2021, he went after Alahad to attempt to stab him. Id., pp. 18-20. Jenkins provided more details in his deposition than in his complaint. Id., pp. 18-20. For his actions, Jenkins was

placed on "redlock" high security for approximately one month. Id., p. 21. Jenkins testified that Alahad made repeated threats to him. Id., p. 37. The day Jenkins was released from "redlock" status, is the same day of the attack. On that day, Sodor came to his cell to see if Jenkins wanted to be escorted for a haircut, shower, and shave. Id., p. 22. Initially, Jenkins told Sodor, "No," because of the "beef" between he and Alahad. Id. Jenkins told Sodor that Alahad had a handcuff key and was going to get him. Id. Sodor laughed at Jenkins and told him he should not have "[done] what [he] did" to Alahad. Id. Sodor attempted to walk Jenkins out of the cell, but when Jenkins said "no," Sodor left to "count" inmates. Id.

Jones came to Jenkins and a similar encounter ensued. Id., pp. 22-23. Jones told Jenkins, "Man, you all aren't going to be nowhere around each other . . . you did what you did. Man up . . . I'll pull you out. So[,] you're going to get into my safety." Id., p. 23. Jones brought Jenkins to "the barbershop room" and said, "You're going to be all right. We're paying attention. We've got to pull everybody else out for showers." Id., p. 24.

According to Jenkins, a few minutes later, he could see through the window between the two rooms that Alahad escaped from restraints. Id., p. 26. Sodor had left Alahad in the room unattended with the door unlocked. Id., p. 33. The officers were upstairs; and Jenkins yelled to tell the officers

and the barber that Alahad was escaping from his restraints. Id., p. 25. The barber told Jenkins, "There's nothing I can do." Id. Alahad ran out of his room, opened the door to Jenkins' room, and began to stab Jenkins. Id., p. 24. The barber ran out; and Jenkins continued yelling for assistance. Id., pp. 24, 27.

Sodor arrived on the scene first and attempted to get a hold of Alahad but did not use any chemical agents or other force. Id. Sodor fell, which gave Alahad an opportunity to attack Jenkins again. Id. Eventually, Jones arrived, grabbed Alahad, and shoved him to the floor, but let Alahad go without using chemical agents. Id. Jenkins maintains the entire incident was video recorded. Id., pp. 28, 36. Jones and Sodor took Jenkins to the medical unit. Id. Afterward, Jenkins was transported to Tallahassee Memorial Hospital. Id. Jenkins spent another day in the prison infirmary for observation. Id.

Jenkins was reassigned to protective management, but he passed out on the floor; and he began coughing up blood. Id., p. 30. Jenkins was brought back to the hospital; his lungs were filled with blood and had to be drained through a tube under his left arm. Id., p. 31. Jenkins spent two days in the hospital. Id. During his testimony, Jenkins insisted he warned Defendants about the threats from Alahad, that Alahad had a makeshift key so that the attack could have been avoided. See generally ECF No. 54.

### 2. Defendant's Affidavits.

As noted above, Defendant's affidavits are nearly identical. ECF No. 48-1 and 48-2. Sodor and Jones maintain they secured Alahad to the table in the next room and left to retrieve another inmate for the showers. ECF No. 48-1, p. 2; ECF No. 48-2, p. 2. When Sodor saw Alahad run into Jenkins' room, he immediately went after him to stop the attack, attempted to get Alahad under control and assisted Jenkins in getting medical attention. Id. Defendants claim they did not know Alahad had a key or a weapon, did not have any conversations with Jenkins about any threats from Alahad, and did not hear any screaming or alerts that Alahad was escaping from his restraints. ECF No. 48-1, p. 2-3; ECF No. 48-2, pp. 2-3.

Jenkins and Defendants provide two different sets of facts. Neither story is rebutted by the record. Whether Jenkins told Defendants about the specific threat from Alahad and whether Alahad was properly secured and supervised are factual determinations for a jury. Similarly, whether the sworn testimony of Defendants or Jenkins is credible is another matter reserved for a jury. The Court will not make credibility determinations at the summary judgment stage. Ultimately, because Defendants have not met their burden, summary judgment should be denied.

C. Qualified Immunity

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The court considers: "whether the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the alleged transgression. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Keith v. Dekalb Cty., 749 F.3d 1034 (11th Cir. 2014). In short, Plaintiff must show that Defendant's actions violated a constitutionally protected right and the right was "clearly established" at the time.

Dismissal based on qualified immunity is proper "when the complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). While the Court is required to accept the allegations in the complaint as true, once a defendant raises a qualified immunity defense, the burden of persuasion belongs to the Plaintiff. Id. The Court is not required to accept Plaintiff's legal conclusions as true.

As set forth above, the evidence viewed in the light most favorable to

Jenkins may establish a constitutional violation. The issue of qualified immunity is intertwined with the disputed issues of material fact regarding the alleged constitutional violation. Accordingly, Defendants are not entitled to summary judgment based on qualified immunity.

## V.     Conclusion and Recommendation

1. The initial Report and Recommendation, ECF No. 55, is hereby **VACATED**.

2. For the reasons stated above, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment, ECF No. 47, be **DENIED** and that the case proceed to trial.

IN CHAMBERS at Tallahassee, Florida, on December 11, 2023.

                              **/s/ Martin A. Fitzpatrick**
                              **MARTIN A. FITZPATRICK**
                              **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).